JOEL E. HALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2773.   Promulgated December 27, 1944.

*Angus M. Woodford, Esq.*, for the petitioner.
*Stanley B. Anderson, Esq.*, for the respondent.

508

## OPINION.

TURNER, *Judge*: Respondent contends that the trust income is taxable to petitioner under the provisions of section 22 (a) of the Internal Revenue Code, as that section has been construed by the Supreme Court in *Helvering* v. *Clifford*, 309 U. S. 331.

For the purposes here, the petitioner apparently has treated the income of the trust as allocable to his four daughters in equal shares and has raised issue only with respect to the income which under the trust instrument might have been distributed to each daughter after her eighteenth birthday, the total amount here in issue being $6,398.10. He contends that the *Clifford* case is not applicable. He raises no issue with respect to the remainder of the income.

The petitioner takes the position that his trust is clearly distinguishable from that in the *Clifford* case as follows: (1) The trust is for a period of fifteen years; (2) petitioner is to receive none of the benefits of the corpus or income; (3) at the termination of the fifteen-year period, all of the undistributed· trust property, corpus and income, must be distributed to the beneficiaries; and (4) he has received no economic benefit from either the corpus or income of the trust.

The fact that the trust here is a fifteen-year trust, while the trust in the *Clifford* case was for only five years, does not of itself make the rule of the *Clifford* case inapplicable, the test being whether the rights of the petitioner in and to the trust corpus and the income therefrom are such as to constitute the income his income within the meaning of section 22 (a), *supra*. *Verne Marshall*, 1 T. C. 442; *Frederick B. Rentschler*, 1 T. C. 814; and *Commissioner* v. *Buck*, 120 Fed. (2d) 775.

In the instant case, it is true that there was only a possibility of a reverter, and that possibility was rather remote. The petitioner did have the power, however, to distribute the income or withhold it, as he saw fit; and for the purposes of the trust the income not distributed became principal. He could invade principal for the purpose of educating and maintaining his children, or for the purpose of defraying the expense of any illness, emergency, or other extreme misfortune. He testified that his purpose in creating the trust was to remove the property from the hazards of the oil well

drilling business in which he was engaged, and yet by the terms of the instrument he retained for himself so long as he should be trustee, and for his wife if she should succeed him, the power and right to use the property in oil well drilling ventures, or in any other venture in which he or anyone else might be engaged. And in that connection, it is noted that any successor trustee other than his wife had no such power. Taking into account the relationship of the parties and the fact that the petitioner did not put the use of corpus and the income therefrom beyond his reach, the only practical result of the grant to trust, if the claim here should be allowable, would be to effect a division of the income of the petitioner for income tax purposes. Borrowing from the language of the Supreme Court in the *Clifford* case, we find it "hard to imagine that * * * [petitioner] felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact." We accordingly conclude that the income of the trust was the income of the petitioner within the meaning of section 22 (a), *supra*. *Helvering .v. Clifford, supra*. See also *Louis Stockstrom*, 3 T. C. 255.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

BLACK, *J.*, dissenting: In making himself trustee in the trust indenture for the benefit of his four children, petitioner Hall, as settlor, undoubtedly conferred upon himself large powers of administrative control over the trust corpus and income. The trust, however, was irrevocable and only upon the happening of a very remote contingency, to wit: "In the event all of the said beneficiaries shall die without issue and prior to the full distribution of this trust estate," was any of the trust corpus or accumulated income to revert to the settlor. It is true that the settlor provided that "the trustee may at any time during the continuance of this trust pay to or expend for the use and benefit of said beneficiaries, any and all sums reasonably necessary for the purpose of educating and maintaining said children and for the purpose of defraying the expense of any illness, emergency or other extreme misfortune." This provision in the trust indenture would undoubtedly make the income of the trust taxable to petitioner under section 167 of the Internal Revenue Code prior to its amendment in the 1943 Act, notwithstanding none of the income of the trust was used by petitioner for the purposes named. See *Helvering* v. *Stuart*, 317 U. S. 154.

However, in such cases as the above, where the evidence shows that none of the income of the trust was used for the support, education, and maintenance of the settlor's minor children, Congress in

section 134 of the Revenue Act of 1943 consummated a retroactive legislative repeal of the *Stuart* case and reinstated the rule exemplified by *E. E. Black*, 36 B. T. A. 346. See *David Small*, 3 T. C. 1142. The majority opinion does not hold that petitioner is taxable with the income of the trust under section 167, but holds that he is taxable with it under section 22 (a) because he retained such large powers of control over the corpus and income as trustee as to still leave himself owner of the property for all intents and purposes. I do not agree with such a conclusion. This case is not like *Commissioner* v. *Buck*, 120 Fed. (2d) 775, cited in the majority opinion. In the *Buck* case the court was careful to point out:

The outstanding fact, which distinguishes this case from *Helvering* v. *Palmer*, 115 F. 2d 368 and *Blair* v. *Commissioner*, 300 U. S. 5, is that respondent has reserved to himself during his life, the power, at any time and from time to time, to "alter or amend in any respect whatsoever," the provisions of the indenture relating to "the disposition of the income and principal of the trust estate or the separate shares into which the same may be divided, and to change any beneficial interest" thereunder. True, he cannot do so in such a way as to "revest in himself title" or "so as to direct that any part of the income * * * be distributed to him or be held or accumulated for future distribution to him." But he has unlimited power, at any moment to reduce or obliterate the share of principal or interest originally allotted to his wife or any child, if for any reason, or for no reason, he decides, in the exercise of his uncontrolled discretion, that any of the beneficiaries is receiving more than seems desirable. * * *

In the *Buck* case a bank was named as trustee and the foregoing broad powers which the court commented upon were reserved to Buck as the settlor of the trust.

We have no such situation in the instant case. All the wide administrative powers of control which the trust indenture authorizes petitioner as the trustee to exercise are to be exercised by him in his fiduciary capacity. I do not understand that the trust indenture confers upon petitioner as trustee the power "to reduce or obliterate the share of principal or interest originally allotted to the beneficiaries" as the court pointed out was present in *Commissioner* v. *Buck, supra*. If I understood that the trust indenture conferred upon petitioner any such broad powers as that, then I would agree that he, as the settlor of the trust, would be taxable with the income. But as I understand the reading of the trust indenture in the instant case, all four beneficiaries were to share equally in the principal and income of the trust and the trustee had no power to change or alter their proportionate interests. For example, he had no power to say that Patricia should be the beneficiary of one-half of the income and principal of the trust instead of one-fourth of it, and that Nanette should not receive anything at all. It is true that the trustee was vested with the power to determine when and in what amounts income and principal were to be distributed to the beneficiaries or whether the income should be accu-

mulated and reinvested and distributed to the beneficiaries at a later date. But, as I interpret the trust indenture, the trustee had to carefully account for the principal and income and at the end of the trust term of fifteen years all principal and accumulated income had to be turned over to the beneficiaries, who were entitled to receive it, and in equal shares to each beneficiary. Cf. *J. O. Whiteley*, 3 T. C. 1265. If the trustee was given the power "to reduce or obliterate" the share of principal or interest originally allotted to any one of his four children except "for the purpose of educating and maintaining said children and for the purpose of defraying the expense of any illness, injury or other extreme misfortune," I fail to see it.

I do not think the power of a trustee to determine whether income or principal of a trust shall be distributed to a beneficiary or withheld from him in a given year, so long as there is no power to deprive such beneficiary of his ultimate share on final distribution, gives the trustee any such economic interest in the property of the trust as to make the income taxable to him under section 22 (a). See my concurring opinion in *Lorenz Iversen*, 3 T. C. 756, at page 775.

Considering all the facts in the instant case, I do not think there is any more reason to say that the income of the trust is taxable to petitioner under section 22 (a) of the Internal Revenue Code than there was in such cases as *Frederick Ayer*, 45 B. T. A. 146; *David Small*, *supra;* and *Estate of Benjamin Lowenstein*, 3 T. C. 1133.

Based on the foregoing reasons, I respectfully dissent from the majority opinion.

SMITH, ARUNDELL, and VAN FOSSAN, *JJ.*, agree with this dissent.