BEN F. HOPKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 110171.   Promulgated September 27, 1945.

*David A. Gaskill, Esq.*, and *Glen O. Smith, Esq.*, for the petitioner.
*W. W. Kerr, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The respondent contends that the petitioner is taxable, under section 22 (a) of the Internal Revenue Code, upon the income of the two trusts involved under the principles laid down in *Helvering* v. *Clifford,* 309 U. S. 331. The petitioner contends that there is no occasion, under all of the facts here involved, for the application of that section or decision.

We have studied the many cases cited to us by both parties, with relation to the many facts involved, and set forth in our findings above, and we have come to the conclusion that the petitioner is taxable upon the trust income. Not every element relied upon by the respondent

supports that conclusion. Thus, we do not think the fact that the original trust corpus was stock of the Cleveland Graphite Bronze Co. is of particular importance. About two-thirds of it was soon sold in order to diversify the securities. The petitioner's holdings of that stock, though larger than those of any other stockholder, were a very small percentage of the stock, and the whole record convinces us that the petitioner's connection with that company was not such as to affect the present question. Nor do we give effect to respondent's idea that income of the trusts was applied to the payment of premiums upon policies of insurance on the life of the grantor. Though suggesting this in the facts requested, respondent does not argue the point. Under the remand of this case, we are to consider only section 22 (a), and may not consider section 167 (a) (3) of the Internal Revenue Code, as to payment of life insurance premiums. In any event, however, the petitioner supplied the money with which each premium was paid, and it went only temporarily into the trust funds, so that we do not think the premiums should be considered as paid by the trustees. Nevertheless, the powers reserved to the grantor were so broad and of such a nature that, in our opinion, under the cited cases the trust income should be taxed to him. In addition to other broad powers the petitioner had, under section 15 of each trust instrument, the power so long as he lived and was competent to act, and within his sole discretion, to require that there be paid to and applied and utilized for each of his sons from net income and/or principal such sums as he deemed to the best interests of his sons. Considering what has been said on the subject of such powers reserved to the grantor, we do not consider it necessary to discuss or enumerate many cases cited by both parties, which are found not to touch the question of the particular power here found.

It is obvious, we think, that the petitioner under section 15 had the right to "spray" the net income of the trusts as between primary beneficiaries and the remaindermen within the thought of *Commissioner* v. *Buck*, 120 Fed. (2d) 775, and more particularly within the decision in *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491, affirming 3 T. C. 255. In the *Stockstrom* case, as to the trusts for the grandchildren, the grantor had reserved to himself, in addition to other broad powers, in effect the same power involved in section 15 of the trust instruments here involved. Discussing the point, the Circuit Court says:

\* \* \* As to the income of the trusts for his grandchildren, petitioner as trustee could make payments to the grandchild-beneficiary or accumulate all or any part of the income during the lifetime of such beneficiary and "the Trustee shall decide as to the disbursement \* \* \* of any current or accumulated income \* \* \* and as to whether any income \* \* \* shall be accumulated and the decision of the Trustee in such matter shall be conclusive and

binding on all parties in interest." Income which had been accumulated in any of the ten trusts during the life of the primary beneficiary was on the latter's death to become part of the remainder, the same as principal. To the extent of his power as trustee to accumulate, petitioner thus could control the disposition of income as between life-beneficiary and remaindermen (in addition to his power in the case of the trusts for his children, on any distribution of income made by him, to choose or apportion between the child-beneficiary and any or all of the latter's children). The record shows that during the taxable years involved, in both the trusts for his children and those for his grandchildren, petitioner had exercised a discretion as to the distribution to or the withholding of income from a primary beneficiary. The primary beneficiaries were not able to realize anything from the trusts, either directly or indirectly, except through distributions by the trustee, for the trust instruments all contained a spendthrift provision preventing the assignment of any interest in either principal or income and any seizure by attachment, garnishment or other process for a beneficiary's debt or liability.

The Tax Court said in its opinion: "The apparent purpose of the trusts * * * was to allocate the income from property owned by the donor-trustee taxpayer to members of his immediate family * * * and at the same time effect a retention by the donor during his life of control over that property equivalent for all practical purposes to the control which he held before the trust gifts, and a control over the amount of income available to the beneficiaries of the trusts thus established by him. * * * There is no question but that he had the broadest administrative powers over the trust corpus. His powers over the distribution of the trust income were * * * [also] substantial. * * * In all of the trusts the immediate payment of any income to any beneficiary was in his sole discretion. While it is true that any trust income not paid out was to be accumulated in the trust, this retention of the power over the purse strings with regard to the members of his immediate family who were beneficiaries would warrant our conclusion that 'the direct satisfactions of pater familias are thus virtually undiminished, as are those indirect satisfactions * * * which the Supreme Court regards as noteworthy indicia of taxability.' See *Commissioner* v. *Buck* [2 Cir.], 120 Fed. (2d) 775, p. 778. When this power of the settlor-trustee over the distribution of the trust income is combined with extraordinarily broad administrative powers over the trust corpus, we can not escape the conclusion that the doctrine of *Helvering* v. *Clifford* [309 U. S. 331] is applicable and the incomes of the trust are taxable to the settlor."

The language above summarizes the views of this Court and of the Circuit Court upon the question there presented, and, since we are unable to distinguish the situation in the *Stockstrom* case from the one here presented, it expresses in substance our views herein.

The petitioner points out particularly what was said in *J. M. Leonard*, 4 T. C. 1271, in effect as distinguishing the *Stockstrom* case and indicating the view of this Court. We find in that case, however, a situation essentially different from the one here involved, for there the grantor did not retain power to direct in his sole discretion the course of principal or income, because 10 percent of the trust estate (not to exceed the sum of $10,000) was required to be delivered to the beneficiary at the age of 21, and at the age of 30, 25 percent was required to be delivered, while at the age of 50 years the trustees were required to

deliver the remainder of the trust estate. Moreover, the trust terminated after 20 years and 10 months after the death of the last of the three living children. Though the grantor did reserve some considerable discretion in the *Leonard* case, it is apparent, we think, that the mandatory distributions above recited distinguish the situation from that in the *Stockstrom* case. It is distinguished in the *Leonard* case, where we pointed out that the trusts in the *Stockstrom* case were for the lifetime of the beneficiaries and that the settlor-trustee was not required to distribute any part of the income to any of the beneficiaries during his lifetime, while in the *Leonard* case we said: "Leonard had no powers to cause the shifting of income from one beneficiary to another such as were present in the *Stockstrom* or *Buck* cases." We pointed out also in the *Leonard* case that "They reserved no power or right to direct that the income or principal of the trusts be paid to beneficiaries other than those named in the trusts." We clearly think, therefore, that the *Leonard* case is not helpful here.

The case of *Joel E. Hall*, 4 T. C. 506, was relied upon by the respondent herein, but has since been reversed, *Hall* v. *Commissioner*, 150 Fed. (2d) 304. In our view, however, the situation there is distinguishable from the instant case, for we find there that the trust was for a period of fifteen years, at the end of which time all assets were required to be distributed to the beneficiaries; and the court, after citing the *Buck*, *Stockstrom*, and other cases, for the statement that, "it has been held that the power to shift the income from one beneficiary to another is the realization of economic gain within the statute," goes on to say:

* * * In our case the trustee was authorized in his discretion to withhold the distribution of income, but he could not shift it from one beneficiary to another—nor could he hold it during his lifetime or the lifetime of the beneficiaries as in the *Stockstrom* and *Miller* cases, and cases cited therein. The trustee could not change the beneficial interest of the beneficiary; he was not authorized or empowered to "reduce or obliterate" the share of principal or interest originally allocated to any of the beneficiaries. At the expiration of the trust, fifteen years from the date of its execution, the corpus and economic income must be distributed to the beneficiaries or their issue. * * *

Plainly, therefore, since in the instant case the petitioner as grantor had the power completely to withhold the income and the trust endured during the lifetime of the beneficiary, the *Hall* case is of no assistance, but indicates rather that, under the circumstances involved in the situation here at hand, the answer would be different.

Petitioner also cites *Alex McCutchin*, 4 T. C. 1242; *David Small*, 3 T. C. 1142; and *Alice Ogden Smith*, 4 T. C. 573. The *McCutchin* case involved two sets of trusts, the first of which did involve some discretion until the beneficiaries reached the age of 25, but after that age the entire net income was required to be distributed to the beneficiaries. As to those trusts we distinguished the situation from that

involved in the *Stockstrom* and *Buck* cases. As to other trusts for the benefit of the grantor's parents, we held that the grantor was taxable under section 22 (a), under the doctrine of the *Buck* and *Stockstrom* cases, and pointed out that the beneficiaries were to be paid, within the discretion of the trustee, that undistributed income was to be accumulated, and that the whole was to vest in the grantor's sons upon the death of the primary beneficiary. The case, therefore, is authority for the view we here take. The *Small* case, with reference to discretion in the distribution or withholding of income, concerned only the minority of children, for upon the attainment of the age of 21 any accumulations were required to be paid over to such child. The case is not authority upon the present question. In *Alice Ogden Smith, supra,* all income accumulated was to be paid to the beneficiary at the age of 30 years, so that any discretion in withholding would not benefit other beneficiaries or remaindermen, whereas in the instant case the beneficiaries might never receive any benefit of the trusts. Had the petitioner in his sole discretion concluded that his sons were amply provided for otherwise, or earning all he thought they needed, he had the power to direct the benefits of the trusts either to the limited beneficiaries under the wills of his sons, or, upon their intestacy, to their issue or their widows, or in default thereof to a certain foundation in Cleveland, Ohio. Such power reserved to the grantor, when added to the other broad powers exercisable by the petitioner, in our opinion, indicate that he retained a control equivalent to an enjoyment taxable under section 22 (a).

We conclude and hold that the Commissioner did not err in adding the trust income to the petitioner's gross income.

With respect to the statute of limitations (section 275 (a) of the Revenue Act of 1936) pleaded (by amendment permitted) by the petitioner as to the year 1936: Since the petitioner relies upon the three-year statute, and does not contend that more than five years elapsed after the filing of return before issuance of notice of deficiency, and since the facts above set forth show omission of more than 25 percent of gross income, properly includible under our conclusions above, it is apparent that in any event the five-year statute, section 275 (c) of the Revenue Act of 1936, has not run, so that, even if we were, under the remand of this case for determination under section 22 (a), free to consider the question of limitations, none would apply.

Reviewed by the Court.

> *Decision will be entered for the respondent in the amounts determined in the deficiency notice.*

SMITH and ARUNDELL, *JJ.*, dissent.