W. L. TAYLOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4027.    Promulgated February 7, 1946.

202

*Homer K. Jones, C. P. A.*, for the petitioner.
*Frank M. Thompson, Jr., Esq.*, for the respondent.

204

**OPINION.**

TYSON, *Judge*: The respondent has taxed the entire income of the Taylor trust for 1941 to the petitioner, and contends, stressing the provisions of paragraphs 4 and 8 of the trust instrument, that it is so taxable under section 22 (a) of the Internal Revenue Code. He cites in support of this contention the cases of *Louis Stockstrom*, 3 T. C. 255; affd., 148 Fed. (2d) 491; certiorari denied, 326 U. S. 719; and *Funsten* v. *Commissioner*, 148 Fed. (2d) 805.

Since we think that decision here is controlled by *J. M. Leonard*, 4 T. C. 1271, it would be fruitless to discuss the numerous cases involving a question such as we have here which have been decided by the courts since the decision by the United States Supreme Court in *Helvering* v. *Clifford*, 309 U. S. 331, applying section 22 (a) of the Internal Revenue Code.

The powers of management given the grantor-trustee under the trust instrument here are, in substance, the same as those given the grantor-trustee in each of three trusts (the only ones necessary to be considered here) in the *Leonard* case; each of such trusts being created for the benefit of a daughter of the grantors, Leonard and his wife, and each trust instrument containing the same terms and conditions.

As to the powers of the grantor-trustee over the income of each of the trusts in the *Leonard* case, the trust instrument shows that so much of the income and principal as, in the discretion of the trustee, was deemed proper could be used at any time, and from time to time, for the maintenance, upkeep, education, travel, and general welfare of the beneficiary until she was 21 years of age, but only if the grantors were unable to support her from other sources. As each beneficiary attained the age of 30 years the entire trust estate could be delivered to her and the trust terminated, and if not terminated then, termination was mandatory upon the beneficiary's reaching the age of 50, when the entire trust estate should be delivered to her; and in any event, the trusts were to terminate 20 years and 10 months after the death of the last to die of the 3 daughters living when the trusts were created. Upon the death of any original beneficiary before the termination of her trust, the trust property was to go to persons other than the grantors. The grantors retained no power to alter, amend, or revoke, and they reserved no power to direct that the income or principal be paid to beneficiaries other than those named in the trusts.

Under paragraph 8 of the trust instrument here involved, the petitioner as trustee had the discretion to pay the net income to Audrey Lucile Taylor and any other after-born children equally, or to pay only so much thereof as in his judgment was necessary for their maintenance, education, support, or pleasure; and to accumulate for future payments or add to the corpus any portion of the net income not needed, in his judgment, for the maintenance, education, support, or pleasure of the beneficiaries. Also, under paragraph 8 of the trust instrument, the accumulated income, if any, and the corpus were payable absolutely, share and share alike, to the beneficiaries at the termination of the trust—that is, on June 20, 1964, with respect to the share of Audrey Lucile Taylor, and when the age of 25 years was attained, with respect to the other beneficiaries. These provisions of the Taylor trust instrument governing the distribution of the income and the corpus of the trust estate, like the provisions governing the management of the trust property, referred to above, are similar to those contained in the trust instrument considered by us in the *Leonard* case, and here, as there, the grantors retained no power to alter, amend, or revoke, and they reserved no power to direct that the income or principal be paid to beneficiaries other than those named in the trust. Under the authority of the *Leonard* case, we hold that the petitioner is not taxable with the income here involved under section 22 (a). See also *Alice Ogden Smith*, 4 T. C. 573; *Alex McCutchin*, 4 T. C. 1242; and *Alma M. Myer*, 6 T. C. 77.

The instant case is distinguished from the *Stockstrom* and *Funsten* cases cited by respondent as the *Stockstrom* case was distinguished in the *Leonard* case; i. e., "In the instant proceedings * * * [the trustee] had no powers to cause the shifting of income from one bene-

ficiary to another such as were present in the *Stockstrom* or *Buck* cases."

The respondent in his brief states that under the provision of the trust instrument authorizing use of the net income for the education, maintenance, and support of the beneficiaries the petitioner could use the entire income of the trust for that purpose and thereby relieve himself of his legal obligation to support his children, and that therefore the entire net income of the trust for the taxable year is taxable to him under *Helvering* v. *Stuart*, 317 U. S. 154.

By paragraph 8 of the trust instrument, the petitioner, as trustee, had the power to use so much of the net income as he deemed necessary for the education, maintenance, or support of his minor children, the beneficiaries of the trust, and, under the law of Tennessee, he had an obligation for their support. *W. C. Cartinhour*, 3 T. C. 482, and cases cited therein. The case, therefore, is one which would fall within the principle of *Helvering* v. *Stuart*, *supra*, except for section 134 of the Revenue Act of 1943. Section 134 amended section 167 of the Internal Revenue Code by adding subsection (c), which provides that the income of a trust shall not be considered taxable to the grantor under subsection (a) or any other provision of Chapter I merely because such income, in the discretion of another person, the trustee, or the grantor acting as trustee, may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, except to the extent that such income is so applied or distributed. The amendment, by section 134 (b), was made applicable generally to taxable years beginning after December 31, 1942, and, in addition, it was made applicable conditionally with respect to all taxable years, to which the general provision did not apply, in the same manner as if such amendments had been a part of the revenue laws applicable to such taxable years—the condition being that there be filed with the Commissioner (in accordance with regulations prescribed by him with the approval of the Secretary) at such time and by such persons as may be prescribed under such regulations, signed consents that there shall be paid, at such time as the Commissioner may prescribe, all of the taxes under Chapter I of the Internal Revenue Code or under the corresponding provisions of prior revenue laws which would have been paid for the taxable years concerned if such amendments had been a part of the revenue laws applicable to such taxable years.

We have found as a fact that no part of the income of the Taylor trust for the year 1941—the first year in which the trust was in existence—has been used for the maintenance, education, or support of the two Tayor children, the present beneficiaries of the trust. None of the income of the trust, therefore, would be taxable to the petitioner in the event of compliance with the conditions prescribed by section 134 (b). We asume that the parties will take such action, if any, as

may be necessary, to give effect to the provisions of section 167 (c). See *W. C. Cartinhour, supra.*

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TURNER, *J.*, dissenting: In my view an intention to retain the right to control and use according to his own dictates the property purportedly placed in trust could hardly have been more plainly stated than was stated by the grantor in the trust instrument herein. The property was his to begin with and the import of property ownership is that the owner may do with it as he pleases. He can keep it, use it, sell it, give it away, or otherwise dispose of it, and, if he does dispose of it or divest himself of his control over and his rights in and to the property, he frees himself of the obligation to pay tax on the income therefrom. In this instance, however, the petitioner for his own reasons saw fit to retain unbridled control over the use and disposition of the property, and the doctrine of *Helvering* v. *Clifford* considered, he does not, in my opinion, have any sound basis for claiming that he should not bear the income tax burden on the income therefrom. Further, he may not, in my opinion, find haven behind the claim that the powers in question are trustee powers and not personal. He, the owner, fixed the terms and conditions of the grant and he specifically provided that his control was to continue without any limitation whatsoever. This fact is further emphasized by the fact that in other provisions, paragraph 4 (g) for instance, where he intended to limit the scope of his powers, he provided that he should act in good faith. It is accordingly my view that the petitioner's rights in and to the property in question were such as to make the income therefrom his income within the meaning of section 22 (a), as interpreted and applied in the *Clifford* case.

ARNOLD, *J.*, agrees with this dissent.

---

KERN, *J.*, dissenting: I respectfully dissent from the conclusion of the majority because I am unable to distinguish this case in principle from *Louis Stockstrom*, 3 T. C. 255; affd., 148 Fed. (2d) 491; certiorari denied, 326 U. S. 719. In that case we held that the income of certain trusts was taxable to the settlor-trustee who held "extraordinarily broad administrative powers over the trust corpus" plus the power to pay immediately to the beneficiaries the trust income or to accumulate the income during their lives, in his absolute discretion.

In the instant case the administrative powers of the settlor-trustee were even more "extraordinarily broad" than those held by the settlor-trustee in the *Stockstrom* case. The settlor-trustee here also has the power in his absolute discretion to either pay immediately the trust

income to or for the use of the beneficiaries, or to accumulate it. The trusts, and, consequently, this latter power, cease when the beneficiaries respectively attain the age of 25, and in this respect the instant case differs from the *Stockstrom* case. However, in my opinion this difference is immaterial. In this case, as in that case, I would conclude that when the "power of the settlor-trustee over the distribution of the trust income is combined with extraordinarily broad administrative powers over the trust corpus, we can not escape the conclusion that the doctrine of *Helvering* v. *Clifford* is applicable and the incomes of the trust are taxable to the settlor."

ARNOLD, *J.*, agrees with this dissent.