## MORSS v. UNITED STATES.

Civil Action No. 3337.

District Court, D. Massachusetts.

Feb. 7, 1946.

Harold L. Clark and Phillips Ketchum, both of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew Sharpe and Leland T. Atherton, Sp. Asst. Attys. Gen., for defendant.

HEALEY, District Judge.

This action is brought to recover $32,-496.04 paid as additional federal income

tax, and interest thereon, for the calendar years 1939, 1940 and 1941, together with interest from the dates of payment. The additional tax was paid by the taxpayer to a former Collector of Internal Revenue for the District of Massachusetts.

The plaintiff created three trusts on December 21, 1936 for three of his children, who were then minors; and on May 27, 1937, he created a fourth trust for a daughter who was born on September 1, 1936. The four trusts are substantially identical as to terms and to form.

The parties have filed a Stipulation of Facts. This stipulation of facts is adopted as my findings of fact and is incorporated in this opinion by reference.

The fundamental question to be determined is whether or not the income of these trusts is taxable to the plaintiff settlor-trustee as a part of his income for the years 1939, 1940 and 1941, under Section 22(a) and/or Section 166 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev. Code, §§ 22(a), 166.

It is contended by the plaintiff that by the trust indentures, he irrevocably and completely divested himself of all interests in the trust property beneficial to himself, and that he reserved only fiduciary powers, none of which were for his own advantage or profit.

The government's position is that the powers reserved by the plaintiff as settlor-trustee of the trusts, considered together in relation to each other, constitute such a retention of control and dominion over the corpora and income of the trust property as to constitute "substantial ownership" of the trust corpora and income for federal income tax purposes. Thus it claims that the plaintiff is the proper person to be taxed on the gross income of these trusts under Section 22(a) of the Internal Revenue Code.

The government specially points to paragraph Seventh, subsections (f), (c), and (e) of the trust indenture, to substantiate their claim that the plaintiff reserved powers sufficient to make him still the substantial owner of the trust corpora and income so as to bring the case within the rule of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

It is argued that by subparagraph (f) the plaintiff could loan the funds indirectly to himself, that by subparagraph (c) he could invest the funds of the trust in his notes or the notes of any corporation, partnership, or association in which he was interested as a stockholder, partner, or otherwise, and thus benefit himself directly or indirectly; that by subparagraph (e) he could make loans to the trusts and pledge the securities thereof as collateral security for these loans, thus making it possible for him to acquire all the securities of the trusts for himself through foreclosure of the collateral on nonpayment of the loans. These powers, it is contended, considered in connection with other powers retained by the plaintiff as trustee, show that in effect, the plaintiff is still the owner of the trust property and that its income should be taxed to him.

In Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, the court said that the answer to the question whether the grantor, after the trust had been created, may still be treated as the owner of the corpus, must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation; that where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary, lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as Section 22(a) is concerned.

■ Thus, although this general rule was set forth, the court recognized that its applicability must be determined according to the facts presented in each case.

The trusts here were irrevocable with the donor as cotrustee with his wife during the tax years involved in this suit. The income of each trust is to be accumulated until the beneficiary becomes 21 years of age when the corpus is to be distributed to the beneficiary in each case in a manner provided for in the trust indenture. The final distribution is to be made when the beneficiary reaches the age of 35 years. On the death of a beneficiary before reaching age 35, all the remaining undistributed trust property is to be distributed to his estate. The trustees, other than the donor-trustee, have the power in their uncontrolled discretion at any time or times, to pay to the beneficiary, or for his benefit, such sums as they may in their discretion determine to be appropriate for the comfort, education or support of the beneficiary; but "they shall not make such payments if they believe other funds should be used to meet such expenses."

In addition to any and all powers otherwise granted, the trustees are given by paragraph Seventh broad powers of management to be exercised in their absolute and uncontrolled discretion. By paragraph Tenth, it is provided that no trustee shall be held liable for anything but his own wilful default.

The crux of the government's argument is that the broad powers of management granted the trustee-settlor by paragraph Seventh considered in the light of the familial relationship of the plaintiff, his co-trustee and the beneficiaries, makes the plaintiff the beneficial owner of the trust property for tax purposes.

It is necessary then to analyze and evaluate the provisions of paragraph Seventh of the indenture to determine whether the plaintiff has retained as trustee so many of the attributes of ownership as to require that he be treated as the owner for tax purposes or whether he has given up the substance of his dominion and control over the trust property. Cory v. Commissioner, 3 Cir., 126 F.2d 689. There must be an economic gain or profit realizable by the grantor before he may be taxed. Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154.

The power to sell or lease for any term any and all property constituting the trust fund granted by paragraph Seventh (a) and allowing such sale or lease to be made to any trustee without any greater liability on the parties to such transaction than would exist if such sale or lease were made to an entirely unrelated person, does not release the trustee from his fiduciary obligation. A court of equity would scrutinize a transaction very closely were the sale or lease made to a trustee.

The power granted by paragraph Seventh (b) to invest and reinvest any money or property in such manner and at such time as may be deemed expedient whether or not such investment would ordinarily be deemed suitable as a trust investment, gives the trustees a broad power of investment, but cannot be said to release the trustee from his fiduciary duty of acting for the best interests of the beneficiary.

The power to sell or transfer any securities or property constituting the trust res to any corporation, partnership or association, and to enter into any reorganization or consolidation of any one or more of the enterprises in which the trust fund is invested, whether or not either or both of the trustees are or may be interested as officers, stockholders, partners or otherwise in such corporation, partnership or association would seem to constitute an unusually broad power in trustees. However, under the circumstances, it seems to be a necessary power.

The trustees have been given by subparagraph (b) the power to invest and reinvest in such enterprises, and it would seem that the power to sell or resell any securities to them or to partake in their reorganization or consolidation could well become necessary under certain circumstances to adequately protect the investments of the trust funds made under that power. Surely a court of equity in reviewing the exercise of this power would be very meticulous in its examination to see that any act of the trustees causing loss to the trust was not a wilful act on their part.

The power to vote in person or by proxy upon any share or shares for any purpose whatsoever, including the purpose of electing either or both of the trustees or a beneficiary to any office or offices in any corporation, partnership or association, cannot be said to confer an economic benefit on the plaintiff, nor can it be deemed to be exercisable free from any fiduciary responsibility.

Assuming that the plaintiff did vote all the stock in the trust funds plus his own, he could not then exercise a controlling voting power in the Simplex Wire and Cable Co. During the years involved, the total stock held by the plaintiff, his wife and the trusts was 13,334 shares out of a total of 120,000 shares outstanding. The balance of the stock was held by the plaintiff's close relatives. Surely they could be found to have interests adverse to the plaintiff and his immediate family.

The government argues that the power contained in paragraph Seventh (e) to borrow money and to mortgage or pledge all or any part of the trust fund to secure such loan and that such loans may be obtained from any trustee, might possibly allow the taxpayer to gain control of all the trust corpus as a creditor of the trust. It is unlikely that a court of equity would permit such an improbable transaction to stand, in the absence of strong evidence of good faith.

The power to lend money, with or without security, upon such terms and to any corporation, partnership or association as the trustees may see fit, whether or not both or any of the trustees may be interested therein, or to any individual or individuals as the trustees may see fit, including any person with whom either or both of said trustees may be associated, as partner or otherwise, is not only one which is a fiduciary power, but like the others mentioned above, may be a necessary one for the trustee in managing the trust estate.

■ It is urged by the government that this power would confer an indirect economic benefit to the plaintiff and that considered in relation to the other powers is sufficient to render the trust income taxable to the plaintiff. It is true that the plaintiff might derive some indirect benefit from such a loan. However, if such a loan were made merely for the taxpayer's economic benefit, and against the best interests of the beneficiaries, the trustees would be violating their obligations and would be held responsible. In my opinion, it was the intent of neither Congress nor the courts that the possibility of indirect benefits to the grantor would be sufficient to make trust income taxable to the grantor.

If such were the case, every family trust would be taxable to the grantor, since, in any such a trust, there are of necessity mutual benefits accruing to both grantor and the beneficiaries.

■ The power granted by paragraph Seventh (g) to deal with the trust fund and to manage, control, and conduct the affairs of the trust as fully and as freely as if the trustees were the absolute owners of the securities and property constituting said fund merely emphasizes the broad powers of management possessed by the trustees and does not directly benefit the trustee. See Hall v. Commissioner of Internal Revenue, 10 Cir., 150 F.2d 304.

The power to determine what is principal and what is income is of no personal advantage to the trustee in the absence of any reversion in the trust estate or any power to alter or amend the trust instruments by changing beneficiaries or beneficial interests as existed in Commissioner of Internal Revenue v. Buck, 2 Cir., 120 F.2d 775.

The power to keep any or all securities or other property in the name of some person or persons other than the trustees or in the name of the trustees or either of them without disclosure of fiduciary capacity is not given for the peculiar advantage of the plaintiff. In fact, according to the stipulation of facts, he never kept them in his own name, but rather, placed them in the custody of the Old Colony Trust Company which kept books of account of the trusts at their offices and handled all routine matters affecting the trusts and handled the assets thereof.

The fact that by paragraph Ninth a trustee is relieved of liability for any but his own wilful default, although it exculpates the plaintiff as trustee to some extent, does not make it possible for him to defeat the rights of the beneficiary in any attempt to gain an economic or other benefit for himself. Viewing the powers set forth heretofore, any attempt by the trustee to use the trust property for his own benefit in violation of the trust would of necessity be a wilful default for which, despite this paragraph, he would be liable.

The Circuit Court of Appeals for this circuit has said:

"Where the grantor has stripped himself of all command over the income for an indefinite period, and in all probability, under the terms of the trust instrument, will never regain beneficial ownership of the corpus, there seems to be no statutory basis for treating the income as that of the grantor under Section 22(a) merely because he has made himself trustee with broad power in that capacity to manage the trust estate." Commissioner of Internal Revenue v. Branch, 1 Cir., 114 F.2d 985, at page 987, 132 A.L.R. 839.

■ A summary of the powers granted the plaintiff here as trustee convinces me that no one of them is equivalent to substantial ownership of the trust res or income by the plaintiff, nor does the accumulation of all of these powers collectively reach that result. No one of them nor all of them, strips the taxpayer of his fiduciary obligation so as to make him substantially the owner of the trusts. There is also no possibility of his receiving any direct economic gain in administering the trust estate. There is no provision which will revest the trust property in the grantor at any time in the future, except for the possibility of his receiving a share by intestacy should a beneficiary die before reaching the age of 35 years. Such a possibility it would seem to me should not be sufficient to bring the case within the rule of Helvering v. Clif-

ford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

In the cases cited by the government in which the courts have decided that trust income was taxable to the settlor or settlor-trustee, it is true, there were present many of the very broad powers of management of the trust property that are found in the instant case. However, in each of those cases, the trust was either of short duration (First National Bank of Chicago v. Commissioner of Internal Revenue, 7 Cir., 110 F.2d 448), or the settlor had in addition to broad powers of management, power to change the beneficial interest from one beneficiary to another (Commissioner of Internal Revenue v. Buck, 2 Cir., 120 F.2d 775), or from the life beneficiary to the remainderman (Stockstrom v. Commissioner of Internal Revenue, 8 Cir., 148 F.2d 491), or he could receive the income himself to use it for the maintenance and support of his minor children (Whitely v. Commissioner of Internal Revenue, 3 Cir., 120 F.2d 782).

The instant case differs from the cases cited above in that here the trusts are irrevocable and no power to alter or amend is reserved to the plaintiff. He has thus irrevocably divested himself of all power to control the income.

The state of facts in the instant case, in my opinion, more closely resembles those in Armstrong v. Commissioner of Internal Revenue, 10 Cir., 143 F.2d 700, Hall v. Commissioner of Internal Revenue, 150 F.2d 304, Smith v. Commissioner of Internal Revenue, 4 T.C. 573, and the trusts for the minor children in the case of Mc-Cutchin v. Commissioner of Internal Revenue, 4 T.C. 1242, in all of which the trust income was found not taxable to the grantor under Section 22(a) of the Internal Revenue Code.

The government also argues that paragraph Fourth of the trust indenture enabling the trustee or trustees other than the plaintiff "in their uncontrolled discretion at any time or times during the life of my said son, * * * pay him from the principal of the trust property such sum or sums as the trustees may in their discretion determine to be appropriate for his comfort, education and support, but the trustees shall not make such payment if they believe other funds should be used to meet such expenses," brings this trust within the provisions of Section 166 of the Internal Revenue Code taxing the income thereof to the plaintiff. They argue that the reservation of the power constituted a substantial economic benefit which inured to the plaintiff regardless of whether or not it was exercised and regardless of the declared limitation on its exercise expressed in the disclaimer contained in paragraph Fourth of the trust instruments, and that thus it is sufficient to make the trust income taxable to the plaintiff under both Section 22(a) and Section 166 of the Internal Revenue Code.

Section 166 relating to revocable trusts states:

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor."

█ In my opinion, paragraph Fourth does not vest in any of the trustees, the power to revest any part of the trust corpus in the children so as to make the trust revocable and to cause Section 166 to operate, or to become an economic benefit to the grantor, under Section 22(a).

By Section 167 of the Internal Revenue Code, as amended February 25, 1944, 58 Stat. 51, subsection (c), 26 U.S.C.A.Int. Rev.Code, § 167(c): "Income of a trust shall not be considered taxable to the grantor under subsection (a) or any other provision of this chapter merely because such income, in the discretion of another person, the trustee, or the grantor acting as trustee or cotrustee, may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, except to the extent that such income is so applied * * *." In the instant case, none of the income from any of those trusts has been used for this purpose.

Also, according to the agreed facts, the plaintiff on December 28, 1944, complied with the provisions of Section 134(b) of the Revenue Act of 1943, 26 U.S.C.A.Int. Rev.Code, § 167 note, to have Section 167(c) apply retroactively and thus entitle

him to exemption from any tax which might be assessed against him under the principle of Helvering v. R. Douglas Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154, on the accumulated income of the trusts.

It seems apparent that Congress in adding these provisions to the Internal Revenue Code (Section 167(c) and Section 134 of the Revenue Act of 1943, not only intended that all family trust income should not be taxed to the donor-trustee, but also that a provision in a trust indenture allowing the use of trust funds for the education, support or maintenance of a grantor's minor children should not be determinative of the question of taxability to the grantor under Section 22(a) or Section 166. See Hall v. Commissioner of Internal Revenue, 10 Cir., 150 F.2d 304 and McCutchin v. Commissioner of Internal Revenue, 4 T.C. 1242.

In my opinion, therefore, the income of these trusts was not taxable to the plaintiff under either Section 22(a) or Section 166 of the Internal Revenue Code and the Collector was in error in assessing the taxes on the plaintiff.

Judgment will be entered for the plaintiff with costs.